Al Haft Sport Enterprises, Inc. v. Commissioner.
Al Haft Sport Enterprises v. Commissioner
Docket No. 19762.
United States Tax Court
1949 Tax Ct. Memo LEXIS 102; 8 T.C.M. (CCH) 731; T.C.M. (RIA) 49202; August 22, 1949
*102 Roger K. Powell, Esq., 17 S. High St., Columbus, Ohio, for the petitioner. John O. Durkan, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined deficiencies for the taxable year 1943 and a penalty as follows: Taxable year 1943
Deficiency
Penalty for fail-
ure to file return
Income tax
$ 937.35
Declared value ex-
cess-profits tax
1,104.78
Excess profits tax
5,806.61
$1,451.66
The principal question is the reasonableness of salary paid by petitioner to its secretary-treasurer and general manager. The petitioner corporation authorized a salary of $15,000 by corporate resolution and actually paid the officer the sum of $18,262. The respondent disallowed as excessive the sum of $8,262. A subsidiary question, dependent on the decision of the primary issue, may arise from respondent's action in determimining a penalty for failing to file an excess profits tax return for the year 1943. [The Facts] Petitioner corporation was incorporated in August 1934 with a paid-in capital of $500, consisting of 10 shares of stock, all of which is owned by A. C. Haft, Jr., known as Al Haft. During *103 the taxable year and for many years preceding, Haft occupied the position of secretary-treasurer and acted as general manager of the corporation. Since its organization petitioner has been engaged in the promotion of professional prize fights and wrestling matches in the city of Columbus, Ohio, and throughout the country. It ceased operation as a corporation in 1947. Prior to incorporation, beginning in 1922, Haft had been engaged as an individual in similar promotions. The name of Al Haft is well known in professional sports circles throughout Ohio and the nation. In his early life he was a professional wrestler under the name of "Young Gotch". He served as wrestling coach at Ohio State University for six years during the 20s. He has been a promoter during most of his adult life. In 1930 he took a group of wrestlers to Australia and there conducted successfully a large series of wrestling bouts. His net profits were approximately $30,000. During that year his associate turned over to Haft $20,000 as profits from the Columbus operations. In 1932 he went to California, where he was similarly engaged. The record in this case well shows that the name of Al Haft is a valuable asset *104 in the sports promotion field and that he individually, rather than his company is known as such promoter. The corporation had no assets of any kind and was, in fact, but an alter ego for Al Haft. He paid all preliminary expenses of promotion personally or from cash received from advance sale of tickets for various events. Without his name and his personal direction the company would undoubtedly have been less successful. The corporation paid very small salaries to other employees, their income largely dependent on the success of the several promotions. The corporation authorized the salary of $15,000 for the year 1943. An equal amount had been authorized as salary for all years preceding excepting 1934 but, with the exception of the year 1937, had never been paid in full. For the taxable year 1943 petitioner was paid $18,262, or $3,262 in excess of the authorized salary. As above noted, the respondent reduced this salary to $10,000, thus giving rise to this controversy. [Opinion] So far the record is favorable to taxpayer's contention. But the above is not enough. The taxpayer tells us nothing of Haft's specific activities in the taxable year. The record shows that in some *105 years operations were profitable and others unprofitable and that it was a hazardous business at best. We are concerned with the year 1943. To prevail, taxpayer must relate its proof to the taxable year. The average of the amounts actually paid to Haft as salary over all the corporate life is slightly in excess of $8,000 per year. According to taxpayer's return for 1943, the gross receipts from "promotions" were $89,026.92, from which he deducted $16,572.44 for portion of proceeds paid to charitable organizations, and Federal and State admissions taxes, leaving a figure of $72,454.48 as net receipts. From that figure are deducted expenses of $57,969.44, leaving a net profit from promotions of $14,485.04. Fees from "bookings" were shown as $10,572.66, from which are deducted expenses aggregating $23,760.89, including $18,262 paid to Haft, leaving a net loss from "bookings" of $13,188.23. This figure is then deducted from "promotions", leaving a net profit from all operations of $1,296.81. Petitioner showed a net loss for every year but 1936 and 1943. There was thus at the end of 1943 an accummulated unpaid balance of salary authorized for Haft of $52,099.79, which accumulation of *106 unapid salary was undoubtedly due to the fact that petitioner didn't make sufficient profits over the years to pay Haft the authorized salary. We have no proof of any other facts specifically relating to 1943. Petitioner claims on brief that it was in fact a personal service corporation albeit it did not file its returns as such. Petitioner would gain small comfort from such a holding. The salary must be shown to be reasonable nonetheless. This, the record does not do. As we view the record, the salary of $10,000 allowed by the respondent was both reasonable and generous. Certain it is that petitioner has not proved the contrary. The record is utterly barren of any proof as to the second issue and petitioner does not refer to it in his briefs. In the state of the record we have no alternative to approving respondent's determination that petitioner should have filed an excess profits tax return. This follows the conclusion on the first issue as a matter of logic and of course. The stipulation of the parties as to certain other issues will be taken into account in the computation consequent hereon. Decision will be entered under Rule 50.